ORAL ARGUMENT NOT YET SCHEDULED
No. 16-5010

_____

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

L. XIA, ET AL.,

Plaintiff-Appellant,

v.

John F. Kerry, et al

Appellees-Appellees

On Appeal from the

United States District Court for the District of Columbia

Case No. 1:14-cv-00057 (Hon. R.C.L.)

_____

**OPENING BRIEF FOR APPELLANTS**

_____


Ning Ye, Esq.
Counsel for the Appellants for the
Record
36-26A Union Street
Suite 3 F
Flushing, NY 11354
Tel.: (718) 308-6626
Facsimile: (718) 228-5816
Email: ynyale@aol.com


November 7, 2016

**CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28.1(a)(1), the undersigned counsel for Appellantsin the above-captioned matter submits this Certificate of Parties, Rulings, andRelated Cases.

**(A) Parties and amici**

Appellants in the court below and Appellants in this Court are:

Lihong XIA

Wei LIU

Hua CHEN

Jinsong CHEN

Hoi Lun H. LI

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the undersigned counsel further submits that:

Lihong Xia is a natural person, a Plaintiff and Appellant here in this instant appeal;

Wei LIU is a natural person, a Plaintiff and Appellant here in this instant appeal;

Hua CHEN is a natural person and a Plaintiff and Appellant here in this instant appeal;

Jinsong CHEN is a natural person and a Plaintiff and Appellant here in this instant appeal;

Hoi Lun H. LI is a natural person and a Plaintiff and Appellant here in this instant appeal;

Appellees in the court below and Appellees in this Court is John F. Kerry, Secretary of State of the United States, in official capacity

Jeh Charles Johnson, Secretary of the United States Department of Homeland Security, in Official Capacity

The amici curiae have appeared in this case is Center of Individual Rights (CIR), represented by Michael Rosman, Esq.

**(B) Rulings Under Review.** Appellants seek review of the District Court's Judgment on November 16, 2015 (Docket 31), Order and Memorandum partially granting Appellees' Motion (Docket 31) rendered on November 16, 2015; dismissing Complaint foremost on Improper Venue (Docket 31), apparently without prejudice;

**(C) Related Cases:**

**Yuanxing LIU, et al, v. Eric Holder, et al (3:15-cv-08091), voluntarily dismissed with joint stipulation in the light of Garcia v. the U.S. Atty Gen. settled 07/31/2016, 07-2164, 3rd Cir. 2008.**

*Counsel for Appellants*

## <u>TABLE OF CONTENTS</u>

1. Statement of Jurisdiction                                          7

2. Statement of the issues                                            7

3. Statement of the Case                                              7

6. Standard of Review                                                 14

6.1. Summary of Arguments                                            15

6. Argument                                                          16

Argument I: Appellants are U.S. Citizens                             16

Argument II: A U.S. Citizen's US Passport Is Her Property            18

Argument III: Appellants' U.S. Passports are Property Rights         21

Argument IV: Appellants' Should be Offered with Evidentiary Hearing
before their U.S. Citizenship Was Revoked or Frustrated or rendered
disabled                                                             25

Argument V: Improper Venue Alone is Insufficient to
Support Summary Dismissal                                             28

Argument VI: No Proper Procedures were Followed                       30

Argument VII: Meritorious Civil Rights Issues Should have
Survived Motion for Summary Judgment                                  33

Argument VIII: Trial Court Failed To Address§1981Reaches
Action Taken UnderColor Of Federal Authority                          37

7. CONCLUSION                                                         42

8. Certificate of Compliance                                         43

9. CERTIFICATE OF SERVICE                                            44

## TABLE OF AUTHORITIES

Kidd v. District of Columbia, 206 F.3d 35 (D.C. Cir. 2000)                                8
I.A.M. Nat. PFB Plan A v. Cooper Indus., Inc., 789 F.2d 21, 24 (D.C. Cir. 1986)    8
*Bombardier Corp. v. Natl Railroad Passgr Corp.*, 333 F.3d 250 (*D.C.Cir.* 2003)      14
Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276(D.C. Cir. 1994)          14
U.S. ex rel.Folliard v. Gov't Acquisitions, Inc.764 F.3d 19, 25-26 (D.C. Cir. 2014)  14
Hall v. Clinton, 285 F.3d 74, 79 (D.C. Cir. 2002)                                        14
Dehaemers v. Wynne, 522 F. Supp. 2d 240, 247 (D.D.C. 2007)                      15
Dorman v. Thornburgh, 740 F. Supp. 875, 880 (D.D.C. 1990)                        15
Gordon v. Courter, No. 14-1382 (CKK), 2015 WL (D.D.C. July 31, 2015)            15
James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099(D.C. Cir. 1996)                  15
Ashcroft v. Iqbal, 556 U.S. 662 (2009)                                                    15
Bell Atl. Corp. v. Twombly, 550 U.S. 544 14 (2007)                                      15
Matter of Villanueva, Interim Decision #2968, BIA, 1984 *                          15
Peignand v. INS, 440 F.2d 757 (1st Cir. 1971)                                          17
Gillars v. United States, 182 F.2d 962 (D.C. Cir. 1950)                                17
Irina Gorbach v. Janet Reno 219 F.3d, 1087 (9th Cir. 2000)                          18
United States v. Manzi, 267 US 463, 48 S.Ct. 238                                      19
Matter of Villanueva, Interim Decision #2968, BIA, 1984                            20
Peignand v. INS, 440 F.2d 757 (1st Cir. 1971)                                          20
Gillars v. United States, 182 F.2d 962 (D.C. Cir. 1950). S.Ct. 850, 864              20
cf. United States v. Rovin, C., 12 F.2d 942, 944                                        20
United States v. Manzi, 276 U.S. 463 , 48 S.Ct. 328.                                    20
Irina Gorbach v. Janet Reno 219 F.3d 1087 (9th Cir. 2000)                          23
Garcia v. the U.S. Attorney General, 07-2164, (3rd Cir. 2008.)                      25
Schneidcrman v. United States, 320 U.S. 118 (1943)                                  26
United States v. Maxwell Land-grant Co. 121 US 325. 3S1, 7 CS. Ct 1015, 1029.    27
SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 1181943)                            27
United States v. Maxwell Land-Grant Co., 121 U.S. 325, 3S1 , 7 S.Ct. 1015, 1029  27
United States v. San Jacinto Tin Co., 125 U.S. 273, 300 , 8                          27
Anger V. Revco Drug Co. 791 F.2d 956 (DC Cir. 1986)                                29
Sinwell v. Shapp, 536 F.2d 15 (3d Cir.1976)                                          29
Anger V. Revco Drug Co. 791 F.2d 956 (DC Cir. 1986)                                30
Sinwell v. Shapp, 536 F.2d 15 (3d Cir.1976)                                          30
Seamon v. Upham, 563 F. Supp. 396, 398-99 nn. 2-3 (E.D.Tex. 1983)            30
cf. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16
L.Ed.2d 218 (1966)                                                                    30
Travis v. Anthes Imperial Limited, 473 F.2d 515, 529(8th Cir. 1973)              30
United States v. Capeletti Brothers, Inc., 621 F.2d 1309, 1317-18 (5th Cir. 1980)    30
Doe v. Board on Professional Responsibility, 717 F.2d 1424, 1428 (D.C. Cir. 1983) 30
Dehaemers v. Wynne, 522 F. Supp. 2d 240, 247 (D.D.C. 2007)                      30
Dorman v. Thornburgh, 740 F. Supp. 875, 880 (D.D.C. 1990)                        30
Gordon v. Courter, No. 14-1382 (CKK), 2015 WL4602588, at *10 (D.D.C. July    ,
2015)                                                                                  30

Amaker v. Haponik, 198 F.R.D. 386, 390-93 (S.D.N.Y. 2000)                                    30
Bullock v. Wash. Metro. Area Transit Auth., 943 F. Supp. 2d 52(D.D.C. 2013)        30
Irina Gorbach v. Janet Reno, 219 F. 3d, 1087 (9th Cir. 2000)                                 31
SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943)                                 31
United States v. Maxwell Land-Grant Co., 121 U.S. 325, 3S1 , 7 S.Ct. 1015, 1029   32
United States v. San Jacinto Tin Co., 125 U.S. 273, 300 , 8 S.Ct. 850, 864
cf. United States v. Rovin, C., 12 F.2d 942, 944                                                      32
Ashcroft v. Iqbal, 556 U.S. 662 (2009)                                                                  35
Bell Atl. Corp. v. Twombly, 550 U.S. 544 14 (2007)                                              35
Hirabayashi v. United States, 320 U.S. 81, 100 (19430                                           36
Inc. v. Pena, 515 U.S. 200, 224 (1995)                                                                  36
Gordon v. U.S. Capitol Police, 778 F.3d 158, 162 (D.C. Cir. 2015)                         37
Ashcroft v. Iqbal, 556U.S. 662 (2009).-36 Doc. No. 15 at 6 n.6                               37
Gordon v. U.S. Capitol Police, 778 F.3d 158, 162 (D.C. Cir. 2015)                         37
DynaLantic v. U.S. Dep't of Defense                                                                     38
Marx v. General Revenue Corp., 133 S. Ct. 1166, 1175 (2013)                               38
Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)                                        38
Bingler v. Johnson, 394 U.S. 741, 749, 751-52 (1969)                                            38
Ford v. United States, 273 U.S. 593, 611 (1927)                                                     39
Colquhoun v. Brooks, 21 Q.B. Div. 52, 65                                                             39
Patterson v. McLean Credit Union, 491 U.S.164, 196 (1989)                                  39
Runyon v. McCrary, 427 U.S. 160, 170(1976)                                                        39
Jones v.Alfred H. Mayer Co., 392 U.S. 409, 422 n.28 (1968)                                  39
Georgia v. Rachel, 384 U.S.780, 789 n.12 (1966)                                                   39
District of Columbia v. Carter, 409 U.S. 418, 422 (1973)                                        40
Baker v. F&F Investment Co., 489 F.2d 829, 833 (7th Cir. 1973)                            40
Bowers v. Campbell, 505 F.2d 1155, 1157-58 (9th Cir. 1974)                                 40
Petterway v. Veterans Admin. Hospital, Houston, TX., 495 F.2d 1223                     40
Young v. Pierce, 544 F. Supp. 1010, 1019 (E.D. Tex. 1982)                                    40
Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003)       40
Posados v. Nat'l City Bank, 296 U.S. 497, 503 (1936)41
Dist. v. T.A., 557 U.S. 230, 239-40 (2009)                                                            41
Lorillard v. Pena, 434 U.S. 575, 580 (1978)41
Cf. United States v. Wheeler, 435 U.S. 313, 321 (1978)                                          41
Arendale v. City of Memphis, 519 F.3d 587, 598 (6th Cir. 2008)                            41
Chisom v. Roemer, 501 U.S. 380, 396 & n.23 (1991)                                            41

**Statutes and Regulations:**

28 U.S.C. § 1291                                                                                                   7
28 U.S.C. § 1331                                                                                                   7
42 U.S.C. § 1981                                                                                                   7
8 U.S.C. § 1503                                                                                                    8
22 CFR 51.62(b)                                                                                                  12

| | |
|---|---|
| 22 U.S.C. Sec. 2705 (1982) | 17 |
| 8 USC 1453 | 18 |
| 22 U.S.C. Sec. 2705 (1982) | 20 |
| Wigmore, Evidence, (3d lid.) 2498 | 20 |
| 42 USC 1964 | 22 |
| 8 U.S.C. S 1453 | 22 |
| INA § 340(a)-24, 8 U.S.C. § 1451(a) -24and INA § 340 (e) or (h) | 25 |
| U.S. Constitution and 8 U.S.C. § 1451-25 | 25 |
| 8 USC 1503 (a) | 25 |
| 1964 Civil Rights Act | 27 |
| 8 USC 1503( a ) | 27 |
| Title 28 U.S.C. § 1391(e) | 29 |
| 28 USC 1406 | 29 |
| 28 USC 1406 | 30 |
| Seamon, 563 F. Supp. at 399 n | 30 |
| Section 1503 of the INA-29 | 31 |
| 8 USC 1503( a ) | 32 |
| Wigmore, Evidence, (3d lid.) 2498 | 32 |
| 8 USC 1503(a) | 32 |
| U.S.C. § 1983 | 33 |
| 8 U.S.C. § 1503-31 | |
| 42 U.S.C. § 1981. Id. | 33 |
| 8 U.S.C. § 1503 | 34 |
| 8 U.S.C. § 1503-32 | 34 |
| 42 U.S.C. § 1981(c) | 38 |
| 42 U.S.C. § 1981 and § 1982 | 39 |
| Civil Rights Act of 1991 | 39 |
| Section 101 of the Civil Rights Act of 1991. | 40 |
| H.R.1H, 102nd Congress,§12(1991) | 41 |

1. **Statement of Jurisdiction**

This Court has appellate jurisdiction under 28 U.S.C. § 1291.   The

Court's jurisdiction also rests on 28 USC § 1331 Federal Question

Jurisdiction.

2. **STATEMENT OF THE ISSUES**

1. Whether Appellants are U.S. Citizens and through what proper procedures their citizenship could be revoked, or rendered invalidated.

2. Whether Appellants' US passports established with prima facie evidence thereof are liberty/property rights?

3. Whether confiscation of Appellants' Passports and application fee constitutes "taking"?

4. Should Appellants, allegedly victims of taking, be entitled to full and fair proceedings and evidentiary hearings?

5. Did taking without hearing based upon their ethnicity origin constitute a civil rights violation?

6. Is Venue Improper alone constitute sufficient basis for summary dismissal?

7. Does 42 U.S.C. § 1981 apply to federal actors/violators, rather than state actors/violators?

3. **Statement of Case**

The Complaint in this action alleges that the Department of Homeland

Security ("DHS") took away their naturalization certificates without any

due process attached hearings. E.g., Doc. No. 2 (Complaint) Appellant

Apendices 15 (hereinafter AA15). It alleges that, accordingly, the State

Department ("DOS") confiscated or revoked their passports. E.g., id.

(AA16, 18, 21, 24). The Complaint alleges that DHS's cancellations

"were based upon its findings that records in support of their

naturalizations were incomplete or evidence in support of their

naturalization was insufficient." Id. AA25. It alleges that

"similarly-situated victims" – that is, individuals whose naturalization certificates were cancelled due to inadequate documentation – were "entirely of original Chinese ethnicity and nationality" and that Appellees, accordingly, had "discriminatorily placed [Appellants and similarly-situated individuals] into a gray limbo of de facto statelessness." Id. ¶ 22 AA15-25 It alleges that similarly-situated whites and or ethnic Caucasians were treated differently and preferably by being provided with full evidentiary hearings prior to any denaturalization actions taken against them. Id. ¶ 23AA15-25. The First Claim for relief alleges a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution and the Second Claim for relief alleges a violation of USCA Case #16-5010

Upon District Judge's directions with detailed guideline, Appellants moved to amend the complaint, Doc. No. 24 AA37, instead of filing a timely NOA, because the District Judge held that her first dismissal did not reach the finality of the case. Nevertheless, the court below denied the motion for leave to file an Amended Complaint following the Court's direction, on the grounds that the proposed amended complaint did not rectify the original complaint's defects (by keeping the context intact addressing constitutional challenges—added) and that permitting the proposed new claim under 8 U.S.C. § 1503 would be futile. Doc. No. 31,AA2. The proposed amended complaint made allegations of race discrimination similar to those in the original complaint. The separate order denying the motion to amend was a final order. Kidd v. District of Columbia, 206 F.3d 35 (D.C. Cir. 2000) (holding that a separate order granting summary judgment was a final order that had to be appealed within 30 days). Accordingly, all interlocutory orders, including the order granting the motion to dismiss, were merged therein. I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc., 789 F.2d 21, 24 (D.C. Cir.

1986) ("[W]hen an interlocutory order is not appealable and . . . merges into the final judgment, it is open to review on appeal from that judgment.").

As one of the similarly situated peers, Appellant Lihong Xia properly filed her Application for Naturalization (Form N-400), (AA140-149) with Defendant DHS on or about May 6, 2003, following all necessary procedural and regulatory requirements, including, but not limited to, paying the USCIS processing fee and the fee (AA150) for fingerprinting; submission of a Form N-400 Application; proof of her Form I-551, the legally admitted permanent resident status; photographs; and any other requirements not herein enumerated. (Group proof Exhibit as AA150)

With her Form N-400 processed by Defendant DHS' USCIS, Appellant Xia's application was granted and she was duly issued her Naturalization Certificate after taking the Oath of Allegiance on June 3, 2004.(AA 151)

Immediately after Appellant Xia received her U.S. citizenship, she traveled to the People's Republic of China ("PRC" or "China") using her U.S. Passport as the conclusive proof of her U.S. citizenship.(AA140-142) The fact of her new U.S. citizenship became known to the PRC government. Consequently, the PRC government revoked her Chinese citizenship simultaneously and retroactively; The revocation took effect retroactively to the date when Appellant Xia was sworn to become a naturalized U.S. citizen, in accordance with the Law of the PRC Nationality Law (AA202). That law offers no procedures or guidelines for automatic reinstatement of a PRC citizenship if an affected person's 3rd citizenship, a triggering cause leading to his/her automatic and mandatory loss of the PRC citizenship, is lost or deprived.*AA201 While in this instant case, the sandwich hardship was that Appellants' U.S. "citizenship" are actually *NOT* taken, presumably it is still there.

After Appellant Xia became a naturalized U.S. citizen and received her U.S. Passport from the co-Defendant DOS in the year of 2004, she traveled internationally back and forth without any problems for approximately a dozen of times.

Appellant Lihong Xia was intercepted after completion of her last international travel and attempted reentering the United States. Without Maranda warning, notice or due process, upon re-entering the U.S. on or about October 26, 2009, Appellant Xia's U.S. Passport was confiscated by Defendant USDOS (AA184) This followed her numerous voyages outside the U.S. using her officially issued U.S. Passport.(AA140) This passport, number 017382376, was issued by Defendant DOS on June 16, 2004, and was valid until June 15, 2014. Without counsel, as was her Constitutional right, and refused to sign the interrogation record, in violation of any due processes. In fact, Appellant Xia insisted on being provided an attorney or the opportunity to have one present during questioning by DHS ICE agents. In a process more appropriate to the police agents of Appellant Xia's former nation, the interrogators refused to allow her assistance of counsel, instead conducting a one-sided interrogation whose questions Appellant Xia declined to answer, as was her Constitutional right. Appellant was ultimately released from ICE custody and notified that she was deemed an *"arriving alien"* and was referred to an Immigration Judge (IJ) for an exclusion hearing. (AA159)

After Appellant Xia's U.S. passport was confiscated without cause by Defendant DHS' ICE component on or about October 26, 2009, Defendant DHS initiated a Removal Proceeding at the United States Immigration Court at 970 Broad Street, Newark, NJ (AA159). That short-lived removal proceeding ended with the presiding Immigration Judge dismissing the case and closing the removal proceedings on February 18, 2010 due to Defendant DHS' "failure to prosecute" the

removal proceedings it initiated against Appellant, according to the recorded announcement by the Newark Immigration Court's telephonic automated system.

Appellant Xia made multiple demands to Defendant DHS to return her seized U.S. passport, starting December 9, 2011; (AA184) these efforts proved fruitless.

On January 5, 2011, Appellant Xia applied for reissuance of her U.S. Passport with Defendant DOS. She did so in accordance with established law that no entity s the Judiciary Branch of the U.S. Government is empowered or legally authorized to revoke a U.S. citizen's U.S. citizenship without denaturalization proceedings; and that being stripped of her right to possess a U.S. Passport and travel outside the U.S. without due process or criminal charges pending against her, baselessly denied her one of the fundamental rights entitled to her as a naturalized U.S. citizen. Appellant Xia duly paid the processing fee, as any other U.S. citizen would do.(AA184-198) Her two checks, totaling $320.00 for passport issuance processing fees, were cashed by Defendant DOS on or about January 9, 2011. (AA198)

Appellees DOS rejected Appellant Xia's application on or about February 11, 2012 and rejected all following prays for reconsideration.(AA 201/202) Its stated basis was that the Appellant's Naturalization Certificate had been "canceled" by Defendant DHS, the issuing Federal Department, the USDHS. Actually as of that moment, there was no cancellation decision in place, it was only a DHS/CIS Notice of Intent to Cancel. Therefore, Defendant DOS' premature revocation appears having been made ahead of time and without grounds. The conflicting records show that the Appellant's Naturalization Certificate had not been "canceled" until October 2, 2012 (AA153) , that was much later than the date when the DOS prematurely revoked the

passport based upon a non-existence of an alleged CIS "Cancellation" at the time, while the proceedings leading to cancellation were later reopened upon the USCIS initiation.

In Defendant DOS' official correspondence dated September 6, 2012,AA201 Defendant DOS admitted retroactively that Appellant Xia's U.S. passport #017382376 was "revoked" pursuant to 22 CFR 51.62(b) based upon the alleged cancellation of her Naturalization Certificate by Defendant DHS; Defendant USDOS' such a revocation merely based upon a sister agency's "intent to cancel the Certificate, a piece of legal paper, rather than status by itself, was unripe, reckless, and invalid;

The record shows that Defendant DHS, while having "revoked" Appellant's U.S. Passport on or about February 11, 2012, and confirmed such revocation on September 6, 2012 and its correspondence dated October 7, 2013 (AA153-155), did not offer any hearings or anything else to Appellant Xia resembling due process, or any kind of opportunity to respond to Appellee DHS' allegations; nor had it given any notice of hearings or of its intended action to Appellant before or after revocation. Neither have Appellees made any attempt during the period from October 26, 2009 up to the present date of filing, to return seized or "revoked" passports back to Appellants, while at the same time "confiscating" Appellants' passport application fees. It is not clear in the Government's vague allegation whether, or how much, Appellant Xia had ever been coerced or blackmailed to pay for "procurement," if any, of a U.S. citizenship by any uniformed government officers under the national logo, as an intergral part of the government of the United States, under the theory of respondeas superiori.   As of this date, Appellant Xia's passport, naturalization certificate, and fees have remained seized and in Appellees' custody, and she has been denied due process (e.g., denaturalization proceedings, removal proceedings, passport status hearing, or any

evidentiary hearings). It is apparent – although, since Defendant DHS has declined to afford Appellant Xia any kind of due process before a judge in a U.S. courtroom, as is such a proper procedures being required for stripping of U.S. citizenship via legitimate formality and proceedings, Appellant remains in a nebulous and stateless limbo – that Defendant DHS intends to deprive Appellant Xia of her "naturalization certificate" while she theoretically maintains US citizenship as matter of law, precluding her from any legal possibility to have her Chinese nationality reinstated. The chaotic mess and contradiction between such substantive Federal law and agency regulatory procedures have wastefully sandwiched the Appellants' miserable stateless status, de facto.

During the period from June 2004 through October 2009, Appellant traveled freely 5 on numerous occasions outside the U.S. During the period from October 2009 through the date of this filing, Appellant Xia has been unable to travel outside the U.S. Her right to travel - and nebulously, her very naturalization status - have been stripped from her by Appellees without due process.

Appellant Xia's rights were further violated by Appellees through an opaque, unilateral administrative proceeding that afforded her no meaningful opportunity to respond to false accusations against her or to prevent Defendant DHS field office from making wrongful administrative decision's purely based upon erroneous fact finding at such degree of absurdity,**blocking any avenues for administrative remedy.

As Appellant Xia offered her U.S. passport for forensic examination to ascertain her citizenship during a period of defective administrative proceedings but in vain. To establish her standing, Appellant prays this Hon. Court to order a U.S. Crime Laboratory a Forensic Examination of her U.S. Passport, whose original copy is now in the custody of the Defendant DHS, if any controversies arise from threshold factual issue.

Appellant Xia file a separate Notice for this Honorable Court to take related Foreign (PRC's) Law addressing Citizenship and Nationality into Judicial Notice after this case is docketed pursuant to the Federal Rules of Civil Procedures; (Art. 9: "Any Chinese national who has settled abroad and who has been naturalized as a foreign national or has acquired foreign nationality of his own free will shall automatically lose Chinese nationality." "Nationality Law of the P.R. C." AA 202)

## 4. **Standard of Review**

This Court reviews an order granting a motion to dismiss *de novo*. *Bombardier Corp. v. National Railroad Passenger Corp.*, 333 F.3d 250 (*D.C.Cir.* 2003) Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). This Judicial Circuit reviews *de novo* a district court's grant of a motion for summary judgment", as well.   United States ex rel. Folliard v. Gov't Acquisitions, Inc., 764 F.3d 19, 25-26 (D.C. Cir. 2014); Hall v. Clinton, 285 F.3d 74, 79 (D.C. Cir. 2002).

---

*The Record is reversibly incomplete by fatal errors: "On October 25, 2013, the director issued a decision cancelling the respondent's certificate of naturalization. The director's decision was based on a finding that the respondent's naturalization was unlawfully obtained from Robert Schofield. "Mr. *Schofield identified the Respondent's **parents** as two of nearly 200 individuals to whom he illegally issued certificates of naturalization*." (please see Page 2 of the decision, emphasis added). (See AA 153) In response to this sort of defamatory statement targeting Plaintiff Xia's deceased parents groundlessly and absurdly, Ms. Xia issued the following statement: "My father was Zengyou Xia. My father was deceased in China on the 9th of January, 2014. My mother was Wenjing Cheng. My mother was deceased in China on January 4th, 2011. Both of my China born parents, during their life time, were Chinese citizens having never left Asia, neither having they ever entered the United States, much less had they ever been living in the United States. My parents had never set their feet in the soil of the United States. It was/is absolutely impossible that they had ever known or learned any U.S. immigration officers, much less Mr. Robert Schofield, through out their life time." AA156

This Judicial Circuit Reviews on on a motion to **dismiss** for **improper venue** is for abuse of discretion. Dehaemers v. Wynne, 522 F. Supp. 2d 240, 247 (D.D.C. 2007); Dorman v. Thornburgh, 740 F. Supp. 875, 880 (D.D.C. 1990); Gordon v. Courter, No. 14-1382 (CKK), 2015 WL 4602588, at *10 (D.D.C. July 31, 2015);This Judicial Circuit reviews the denial of leave to amend for abuse of discretion. James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)

Generally, sufficiency of federal question issue is reviewed by Supreme Court's plausibility pleading framework. "Whether a complaint sufficiently states a claim upon which relief can be granted is governed by the Supreme Court's plausibility pleading framework." See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 14 (2007). Both Iqbal and Twombly, however, pertain to whether a complaint contains sufficient factual matter to proceed beyond dismissal. See Iqbal, 556 U.S. at 678

**5.** <u>**Summary of Arguments:**</u>

Even though in Appellees' stonewalling tactic by even to grant Appellants non-immigrant "U" Visas during the negotiation phase, the Appellants claimed that they are U.S. Citizens, being proven by prima facie evidence upon which no or little factual argument has been raised, argued, developed and adjudicated;

Though, their U.S. Citizenship are theoretically maintained *"as is"*, which prevents them from reinstating or seeking for PRC citizenship due to PRC's peculiar legal interpretation on bar of "dual citizenship", Appellees took legally questionable administrative measures to render such citizenship disabled and invalid, by and through "cancellation of naturalization certificate" without offering evidentiary hearings in violation of due process.

Appellants' US Passports, which were improperly confiscated by

Appellee USDOS, and fee paid to re-apply for U.S. passport, that were also confiscated, should be deemed Appellants' property and property rights, including what the Court held the "most valuable property rights"; The victims suffering from such "taking" have never given any hearings, thus unsophisticatedly violates their both substantive and procedural due process rights under the 5th Amendment;

The de facto "denaturalization" without equally offering the victims of Chinese ethnicity with evidentiary hearings in denaturalization proceedings, all Appellants were treated discriminatorily at least partially due to their race and ethnicity as Appellants presentation of a chart listing denaturalization cases where all subjects belonging to races other than Chinese. They all received full and fair denaturalization hearings. Revisiting the lower Court's final disposition, dismissal without prejudice advising Appellant Xia to file the same Section 1503 Complaint in New Jersey, the Decision actually only address a lone Section 1503 issues: Venue improper. While the contents of the underlying cases are not just addressing controversies under Section 1503. The final disposition has deviated from trial judge's own direction addressing Twombly and Aqbal issues.    Most eye-catching, the lower Court's dismissal of the procedural Motion for Leave of the Court to file Amended Complaint may have created a head-on collision course with its own ruling that the Appellants would be encouraged to file an Amended Complaint in the light Twombly and Aqbal (and by inclusion of Section 1503 Claim.)

## 6. Argument

## Argument I: Appellants are U.S. Citizens:

All Appellants properly claimed that they are U.S. citizens bearing prima facie evidence of their U.S. citizenship with the decade long existing genuine, authentic and officially issued U.S. Passports.  Their claim to be the citizens of the United States citizens are evidenced by

their possessing, showing and using their properly issued U.S. passports. That the bearer of an officially issued U.S. passport laid the solid prima facie evidence of her U.S. citizenship is also seen in decisions of the administrative proceedings. The Board of Immigration Appeals ("BIA") held: "Thus, the petitioner's apparently valid United States citizen passport will constitute conclusive proof of his claimed United States citizenship…. unless it is invalid on its face." Citing 22 U.S.C. Sec. 2705 (1982) " Accordingly, we hold that unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship." Matter of Villanueva, Interim Decision #2968, BIA, 1984 * Peignand v. INS, 440 F.2d 757 (1st Cir. 1971); Gillars v. United States, 182 F.2d 962 (D.C. Cir. 1950).

Due to the fact that Appellees rejected Appellants' offer for forensic examination of their allegedly USDOS issued US passports to prove their U.S. citizenship, Appellees may have forfeited their position to challenge Appellants' U.S. citizenship, while they actually did little to argue on citizenship issue.   Therefore, consequently, all appellants here have laid solid foundation on strong presumption that they are U.S. citizens, upon which all appellants' claims and arguments are built on trial level, as well as on the appellate level. The lower court, while dismissing the case in Appellees' favor, should have addressed this preliminary, threshold issue. The lower court made a reversible and clear error by failure to address this issue, but ruled that at least one of the Appellants should go to U.S. District Court for the District of New Jersey to argue on this issue, given to Appellant Xia was a resident of Great Washington Area during the period while she received her citizenship.

Appellants' status is the U.S. citizens, assuming arguendo they

received (or allegedly "procured") their naturalization certificate for incompleteness of case file, illegality or fraud. "Attorney General has the power to cancel the (naturalization ) certificate if it has been illegally or fraudulently procured, but such cancellation does not affect citizenship status. See 8 USC 1453. Citizenship must be taken away through denaturalization proceedings by U.S. District Court, rather by the agency which issues the naturalization certificate. Irina Gorbach v. Janet Reno 219 F.3d, 1087 (9th Cir. 2000)

### Argument II: A U.S. Citizen's US Passport Is Her Property

We understand that Appellees' purpose to "take" away Appellants' U.S. passport is to rip off Appellants' fundamental citizen rights regarding liberty to travel and of mobility. To make our argument more simplified and streamlined, we just focus upon Appellants' property rights.

"This is not a naturalization proceedings in which Government is being asked to confer the privilege of citizenship upon an applicant. Instead the Government seeks to turn the clock back to twelve years after full citizenship was conferred upon petitioner by judicial decree, and to deprive him of the priceless benefits that derive from the status. In the consequences it is *more serious* than ***a taking of one's property***, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of *greater worth* to an individual than it is in this country. It would be difficult to exaggerate **its value** and importance. By many it is regarded as the highest hope of civilized men. This does not mean that once granted to an alien, citizenship cannot be revoked or cancelled on legal grounds under appropriate proof. But such a right once conferred should not be taken away without the proceeding." United States v. Manzi, 267 US 463, 48 S.Ct. 238 (emphasis added)

A greater value a property is still property as well. The purpose and

consequence in revoking a citizen's U.S. passport, which he/she acquired based upon his/her naturalization certificate of birth certificate from U.S. government agency by paying fees, is not only a proof of citizenship, it is a proof of property, in addition to it is being property by itself. Therefore, in foregoing light, the USDOS's conceded "revocation" of Appellants' passport is a taking of the affected party's property rights. A taking of a citizen's property without due process, not even an evidentiary hearing is a violation of both substantive and procedural due process under 5th Amendment. This was exactly happened in the underlying cause.

While denying their property rights of their U.S. citizenship, Appellees, Appellees refused to take forensic examination to ascertain the genuine nature of Appellants' U.S. Passports. When the rights and privileges were endowed and vested, to take it away must go through proper and adequate proceedings. Moreover, in the light of Garcia v. U.S. Attorney General, a 3rd Circuit's landmark precedent, the statutory limitation of the government's pursuit to pursue what it alleged "immigration fraud" is 5 years, which had long been expired.

Appellees erroneously and arbitrarily took Appellants' such hard earned precious property as their naturalization certificates and U.S. passports. Such erroneous, improper, and arbitrary taking caused Appellants to have suffered so dearly the immeasurable losses concerning tangible and intangible value being deprived without due process, without offering any reasonable and meaningful remedies;

"Unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship." MATTER OF VILLANUEVA, Interim Decision #2968, BIA, 1984

That the bearer of an officially issued U.S. passport laid the solid prima

facie evidence of her U.S. citizenship is also seen in decisions of the administrative proceedings. The Board of Immigration Appeals ("BIA") held: "Thus, the petitioner's apparently valid United States citizen passport will constitute conclusive proof of his claimed United States citizenship…. unless it is invalid on its face." Citing 22 U.S.C. Sec. 2705 (1982) " Accordingly, we hold that unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship." Matter of Villanueva, Interim Decision #2968, BIA, 1984 * Peignand v. INS, 440 F.2d 757 (1st Cir. 1971); Gillars v. United States, 182 F.2d 962 (D.C. Cir. 1950). S.Ct. 850, 864; cf. United States v. Rovin, C., 12 F.2d 942, 944. See Wigmore, Evidence, (3d lid.) 2498

Not only Appellants' property rights in their hard-earned Certificate and Passport have been deprived, the consequence of such confiscation of their U.S. passports have virtually ripped off Appellants' freedom of mobility and traveling around. Therefore, Appellants' constitutional rights to liberty and property were both infringed, violated and tramped for violation of substantive due process; Ripped off also are their rights to have a full denaturalization hearing, violation of procedural due process.

Additionally, such due process violation was built upon the Appellants' U.S. citizenship has been collaterally and groundlessly attacked by the arbitrary cancellation and/or confiscation by Appellees and Defendant's Federal Departments (canceled in fact by the Department of State ["DOS"], but in corroboration with the Department of Homeland Security ["DHS"]), arbitrarily taking    Appellants' U.S. Passports, without due process of law, and thereby in manifold violations of U.S. federal laws as well as international law.    Such erroneous taking of the Appellants' property and liberty rights without offering the latter

with procedural due process of law may have been motivated by the
Appellant's color, race, ethnicity and of their national origin.    All named
Appellants and similarly situated fellow victims not included in this
instant case, most likely all or in part because of their original Chinese
ethnicity.    All or most of the 193 similarly situated, targeted victims
appear to be originally of Chinese race, ethnicity and nationality. The
victims, while maintaining in U.S. citizens' status, de jure, have since
become a particularly singled out special group, in comparison to the rest
of 300 million other U.S. fellow citizens, being severely segregated and
discriminated. These "U.S. citizens" are not barred from entering such
designated public place and voting ballots, government agency
employment, and so on, they are not allowed to enter into the vast
landmass under the Banner of Star and Stripes, into which they and their
families have long deeply rooted.    Therefore, the Appellees' action to
create such a besieged and segregated special "citizens" have violated the
principles and spirit of 1964 Civil Rights Act.

## Argument III: Appellants' U.S. Passports are Property Rights

Not only Appellants' property rights in their hard-earned Certificate
and Passport have been deprived, the consequence of such confiscation of
their U.S. passports have virtually ripped off Appellants' freedom of
mobility and traveling around. Therefore, Appellants' constitutional rights
to liberty and property were both infringed, violated and tramped;
By many it is regarded as the highest hope of civilized men. This does not
mean that once granted to an alien, citizenship cannot be revoked or
canceled on legal grounds under appropriate proof. But such a right once
conferred should not be taken away without the clearest sort of
justification and proof. So, whatever may be the rule in a naturalization
proceeding (see United States v. Manzi, 276 U.S. 463 , 48 S.Ct. 328.)
Theoretically, all the plaintiffs are still U.S. citizens whose **citizenship**

**can only be taken away through denaturalization proceedings by the U.S. Judiciary Branch** and none of them had ever been offered such a due process mechanism and opportunity yet. Yet such limbo citizenship does not help, yet makes things worse. That they are all theoretically "still U.S. citizens" legal status only means the administrative "taking" ripping off their constitutionally protected liberty and property rights as citizens blocked any alternative remedies and protection from any other channels or authorities. The government of these victims prior citizenship (now lost) will never help, and cannot, if it had desired to help, because these victims are deemed U.S. citizens, *de jure.*

Worst of all, the Executive Branch's half-way around mischief by taking part (passport and naturalization certificate) and leaving part intact (*de jure* U.S. citizen legal status) has **created a sub-class group of U.S. citizens,** a segregated U.S. citizens whose liberty of mobility/traveling, property rights, and access to due process, are not entitled to protection of U.S. Constitution: a totally discriminated and excluded group of "sub-citizens", all of whom are of original Chinese ethnicity, such a half-done administrative mischievous practice has triggered civil rights issues under 42 USC 1964, et seq. and must be enjoined.

Even though, the Federal Statute provides that the Attorney General has the power to cancel the certificate if it has been illegally or fraudulently procured, yet such cancellation does not affect citizenship status. See 8 U.S.C. S 1453.  With such statutory empowerment in place, it doesn't mean the Service should be encouraged to abusively invocation of such empowerment to "cancel" in practice given to the totality of the outcome with this level of absurdity.   When case law has well established that U.S. Citizenship status must be taken away through denaturalization proceedings by U.S. district court, rather by the agency which issues the naturalization certificate, Irina Gorbach v. Janet Reno 219 F.3d 1087 (9th

Cir. 2000) (Emphasis added), the field office's usually abusive practice to "cancel" a naturalization certificate should be restrictively redefined.

Additionally, when such simple, lazy and convenient "cancellation" practice has created such a segregated "sub-citizens" class among U.S. citizens with all citizen's basic rights, liberty and dignity ripped off, such a practice has jeopardized the unity and integrity of this great nation.

In complete different pattern of government practice being adopted against 107 similarly situated persons of other original ethnicity (Exhibit #12, JA      ) for taking away their U.S. citizenship, most of them are Caucasian whites, then most of them, if not all of them, appear to have received full evidentiary hearings through adequate, full and fair denaturalization proceedings; The list of denaturalized persons, representing a pattern of practice in a differently situated group of ethnicity, demonstrates that most denaturalization have, for one reason for another, resulted from war crimes – including, relevant to the instant case, fraudulent obtaining of citizenship by failing to disclose war crimes. The anomaly here is that DHS is attempting to strip these people, of original Chinese ethnicity, of their citizenship privileges w/o due process, and for grounds far less than war crimes – being blackmailed by a crooked adjudication officer, may not be equal to herding people into gas chambers. This pattern of practices in such racially based distinction may highly likely highlight what can be termed as negative racial profiling discriminating Asian race. Race element in somewhere can be clearly seen in these Plaintiffs while their losing of privileges of citizenship without due process, given to the pattern of deprivation of privileges of U.S. citizenship properly through full due process of denaturalization being fully adopted in different group of persons, mostly non-Asian ethnicity group.

Defendant DHS stated reasons for "canceling" Plaintiffs' naturalization

certificates were based upon its erroneous or even absurd fact findings that records in support of their naturalizations were incomplete or evidence in support of their naturalization was insufficient. In so doing, Defendant DHS holds Plaintiffs accountable for government's own administrative incompetence, misdeeds and irregularity, an violation of APA.

If there were any questions regarding suitability of any of the Plaintiffs for naturalization, those questions should have been raised prior to naturalization, rather than thereafter. With regard to its incomplete record-keeping, there should be no presumption on the Government's part that Plaintiffs' documentation was in any way defective or incomplete at the time their applications were processed.

In short, through its arbitrary "cancellation," Defendant DHS has presumed Plaintiffs guilty after the fact, administratively "convicted" them, and sentenced them to "statelessness", all without a transparent due process and by circumventing the properly vested adjudicator of denaturalization, *i.e.,* the Federal judiciary branch.

Defendant DHS may have "canceled" Plaintiffs' naturalization certificates based upon its finding that a convicted U.S. immigration officer (Defendant DHS' agent and employee) Robert Scholfield had varied degrees of personal involvement, according to Mr. Scholfield's alleged hearsay statement, in the proceedings leading to issuance of Plaintiffs' Naturalization Certificates, and that the proceedings might have involved internal administrative irregularities or misconducts by Defendant DHS and its aforementioned employee Mr. Schofield. According to the theory of respondeat superior, such internal irregularities and their adversary consequences should have been attributed or imputed to Defendant DHS, rather than being reversely imputed to the victims of such irregularities – in the instant case, the

Plaintiffs – who had no knowledge of or control over such issues of government agency's irregularities.

No government agency has offered any compensation to Plaintiff Xia or her fellow Plaintiffs for they having been apparently victimized by such alleged misdeeds and irregularities on Defendants' side.  Neither has Defendant USDOS ever thought about refunding application fees for Plaintiff's application for reissuance of passport.

Underlying alleged administrative irregularities, if any, had occurred about a decade prior to Defendants' acts in almost all these similarly situated cases; therefore, laches did occur before Defendant DHS might even consider raising the issue. In every case, the 5-year statutory limitation had been reached regarding any remotely possible accusation of alleged "immigration fraud." Garcia v. the U.S. Attorney General, 07-2164, (3rd Cir. 2008.)

It appears that once again, the government decided to take an easier way to get the problems behind.   On June 27, 2013, almost 5 years later, Mr. Liu was provided an administrative hearing in the U.S. Embassy in Beijing, China, relating to either revocation of his passport according to what Defendant DHS interpreted as INA § 340(a), 8 U.S.C. § 1451(a) and INA § 340 (e) or (h), respectively.

Plaintiffs request that this Court issue injunctive relief and a writ in the nature of mandamus compelling the Defendants to renew and reissue their U.S. Passports and return or reissue their naturalization certificates to them under the U.S. Constitution and 8 U.S.C. § 1451, also pursuant to 8 USC 1503 (a).

### Argument IV: Appellants' Should be Offered with Evidentiary Hearing before their U.S. Citizenship Was Revoked or Frustrated or rendered disabled

In eyes of law, all appellants, claimed U.S. citizens, in this instant case, should Not be rendered stateless at limbo by frustrating their

citizens' status through revocation of their U.S. passports, or cancelling their naturalization certificates.

"This is so because rights once conferred should not be lightly revoked." Schneidcrman v. United States, 320 U.S. 118 (1943)

Appellants in this case, alleged U.S. citizens through naturalization were not offered full, fair and meaningful De-Naturalization proceedings when their Naturalization Certificates and U.S. Passports, were arbitrarily taken by the Appellees. Therefore, Appellants' constitutional rights to liberty and property were both infringed, violated and tramped without due process of law;

The lower court was silent on the issues of appellants property rights taken away without due process. Appellants' has been collaterally and groundlessly attacked by the arbitrary cancellation and/or confiscation by Appellees    But in corroboration with the Department of Homeland Security ["DHS"]), arbitrarily taking Appellants' U.S. Passports, without due process of law, and thereby in manifold violations of U.S. federal laws as well as international law.    Such erroneous taking of the Appellants' property and liberty rights without offering the latter with procedural due process of law may have been motivated by the Appellant's color, race, ethnicity and of their national origin.    All named Appellants and similarly situated fellow victims not included in this instant case, most likely all or in part because of their original Chinese ethnicity.    All or most of the 193 similarly situated, targeted victims appear to be originally of Chinese race, ethnicity and nationality. The victims, while maintaining in U.S. citizens' status, de jure, have since become a particularly singled out special group, in comparison to the rest of 300 million other U.S. fellow citizens, being severely segregated and discriminated. These "U.S. citizens" are not barred from entering such designated public place and voting ballots, government agency

employment, and so on, they are not allowed to enter into the vast landmass under the Banner of Star and Stripes, into which they and their families have long deeply rooted. Therefore, the Appellees' action to create such a besieged and segregated special "citizens" have violated the principles and spirit of 1964 Civil Rights Act.

Therefore, what was absent in deprivation of the Appellants' citizen status, *de facto*, and missing in lower court's ruling, "is full course of due process", in which the Appellees is under the obligation to present "clear, unequivocal and convincing evidence" to prove denuralization. (United States v. Maxwell Land-grant Co. 121 US 325. 3S1, 7 CS. Ct 1015, 1029.

Therefore, the Appellees' action to create such a besieged and segregated special "citizens" have violated the principles and spirit of 1964 Civil Rights Act.

An administrative proceeding is by no means a due process proceeding. "It is obviously not proper by summary administrative procedures, without full course of due process. " SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) (emphasis added)

In such a "full course of due process" proceedings, de novo, under 8 USC 1503( a ), by this Honorable Court, it should be the Government, rather than this complainant, that has the Burden of Proof by Showing "Clear, Unequivocal, and Convincing Evidence. …the burden of proof shifted upon the government which initiates the proceedings: "To set aside such a grant the evidence must be 'clear, unequivocal, and convincing" It cannot be done… leaves the issue in doubt. See Maxwell Land-Grant Case (United States v. Maxwell Land-Grant Co.), 121 U.S. 325, 3S1 , 7 S.Ct. 1015, 1029; United States v. San Jacinto Tin Co., 125 U.S. 273, 300 , 8

Appellants' grievances specifically derive from their U.S. citizenship,

proven prima facie by the existence of their genuine, officially issued U.S. Passports.

Appellees erroneously and arbitrarily took Appellants' such hard earned precious property as their naturalization certificates and U.S. passports. Such erroneous, improper, and arbitrary taking caused Appellants to have suffered so dearly the immeasurable losses concerning tangible and intangible value being deprived without due process, without offering any reasonable and meaningful remedies;

## Argument V: Improper Venue Alone is Insufficient to Support Summary Dismissal

Generally speaking, Venue in the District of Columbia is proper pursuant to Title 28 U.S.C. § 1391(e) in that Defendants John F. Kerry and Rand Beers are residents of the District of Columbia, a substantial part of the activities complained of occurred in the District of Columbia, where both defendant's organizational headquarters are situated.

The lower court summarily dismissed the underlying case by its finding that Appellant Lihong Xia alone is a resident of New Jersey, even though, the same court found Appellant Xia was the resident of DC or Greater Washington DC areas "at the time of accrual of the triggering issue". The Court found it immaterial. Lower Court summarily dismissed the case without prejudice recommending Appellant Lihong Xia to file same complaint in the jurisdiction of New Jersey, citing 28 USC 1406.

Improper venue indicated on the face of the complaint was not sufficient cause to refuse to permit plaintiffs to proceed. Anger V. Revco Drug Co. 791 F.2d 956 (DC Cir. 1986) citing *Sinwell v. Shapp,* 536 F.2d 15 (3d Cir.1976)

Pendent venue, like pendent jurisdiction, aims to promote judicial economy as well as convenience and fairness to the parties. *See Seamon v. Upham,* 563 F. Supp. 396, 398-99 nn. 2-3 (E.D.Tex. 1983); *cf. United*

*Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (efficiency, convenience and fairness rationales for pendent jurisdiction). In deciding whether to invoke pendent venue a district court must consider the same factors that bear on economy and convenience as in deciding whether to exercise pendent jurisdiction: whether the pendent and principal claims arise out of a common nucleus of operative facts; whether they present common issues of proof; whether they involve the same witnesses. *See Travis v. Anthes Imperial Limited,* 473 F.2d 515, 529(8th Cir. 1973) (pendent venue lies for "essentially the same reasons as . . . pendent subject matter jurisdiction"); *Seamon,* 563 F. Supp. at 399 n. The judicial efficiency rationale for pendent venue makes it clear that "a district court has wide discretion to refuse to hear a pendent claim." *United States v. Capeletti Brothers, Inc.,* 621 F.2d 1309, 1317-18 (5th Cir. 1980) (discussing pendent jurisdiction); *see also Doe v. Board on Professional Responsibility,* 717 F.2d 1424, 1428 (D.C. Cir. 1983) (district court decision to assume pendent jurisdiction is "entitled to substantial deference on appeal . . . ").

In that vein, several decisions have found it futile to add new claims for improper venue. See, e.g., Dehaemers v. Wynne, 522 F. Supp. 2d 240, 247 (D.D.C. 2007); Dorman v. Thornburgh, 740 F. Supp. 875, 880 (D.D.C. 1990); Gordon v. Courter, No. 14-1382 (CKK), 2015 WL 4602588, at *10 (D.D.C. July 31, 2015); Amaker v. Haponik, 198 F.R.D. 386, 390-93 (S.D.N.Y. 2000); but see Bullock v. Wash. Metro. Area Transit Auth., 943 F. Supp. 2d 52 (D.D.C. 2013) Courts may allow parties to make amendment in improper venue and then transferring the case as amended. "The District court …laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been

brought….Plaintiff Xia may file a complaint in the District of New Jersey, her place of residence, under Section 1503 of the INA if she so desires." *Judge Royce C. Lamberth's Memorandum of Dismissal, JA 9*

On its very surface, such a judicial reasoning behind dismissal appears balancing of all elements, it is reversibly erroneous by its deep nature because it violates the spirit of venue provisions: judicial economy, and forum convenience for litigating parties.

**Argument VI: No Proper Procedures were Followed**

Neither the Appellees' administrative operations, nor the lower court's ruling has clearly addressed the problem: In absence of evidentiary hearing, no proper procedures were followed by these appellees in actually "denaturalized" all appellants.

It has been well established that the "well established and carefully constructed scheme: the Atty Gen naturalize, the district Court Denaturalize…And likewise here, implying authority for the Attorney General to take away people's citizenship administratively would gravely upset this carefully constructed legislative arrangement." Irina Gorbach v. Janet Reno, 219 F. 3d, 1087 (9th Cir. 2000). Such a well established scheme was derailed by the Appellees.

The records of the United States Citizenship and Immigration Service ("USCIS"), a subsidiary component of Defendant DHS, show that Appellant Xia properly filed her Application for Naturalization (Form N-400) with Defendant DHS on or about May 6, 2003, following all necessary procedural and regulatory requirements, including, but not limited to, paying the USCIS processing fee and the fee for fingerprinting; submission of a Form N-400 Application; proof of her Form I-551, the legally admitted permanent resident status; photographs; and any other requirements not herein enumerated. (Group proof Exhibit 2, JA      )

The Complaint and Amended Complaint in this action allege that the

Department of Homeland Security ("DHS") took away their naturalization certificates without any due process requested hearings, even though the USCIS offered agency interrogations, rather than hearings, it by no means due process attached proceedings. E.g., Doc. No. 2 (Complaint) JA      .

An administrative proceeding is by no means a due process proceeding. "It is obviously not proper by summary administrative procedures, without full course of due process. " SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) SCI INF.I HERMAN v. UNITED STATES, 320 U.S. 118 (1943) (emphasis added)

In such a "full course of due process" proceedings, de novo, under 8 USC 1503( a ), by this Honorable Court, it should be the Government, rather than this complainant, that has the Burden of Proof by Showing "Clear, Unequivocal, and Convincing Evidence. …the burden of proof shifted upon the government which initiates the proceedings: "To set aside such a grant the evidence must be 'clear, unequivocal, and convincing" It cannot be done… leaves the issue in doubt. See Maxwell Land-Grant Case (United States v. Maxwell Land-Grant Co.), 121 U.S. 325, 3S1 , 7 S.Ct. 1015, 1029; United States v. San Jacinto Tin Co., 125 U.S. 273, 300 , 8 S.Ct. 850, 864; cf. United States v. Rovin, C., 12 F.2d 942, 944. See Wigmore, Evidence, (3d lid.) 2498.

Here, all Appellants' rights to liberty and property, i.e., his arbitrarily deprived U.S. citizenship should be reinstated through full scale proceedings pursuant to 8 USC 1503(a ), unless Appellees take appropriate and reasonable remedial measures;

The Complaint and Amended Complaint allege that the State Department ("DOS"), acting on inter-agency coordination, confiscated their passports without offering their hearings violated their liberty and property rights under substantive due process of 5th Amendment. E.g., id.

¶¶ 13, 16- 18, 28, 34-35, JA      . The Complaint and Amended Complaint allege that DHS's cancellations "were based upon its findings that **records in support of their naturalizations were incomplete or evidence in support of their naturalization was insufficient**." Id. ¶ 24, while . Complaint and Amended Complaint argued that "similarly situated victims" – that are, individuals whose naturalization certificates were cancelled due to inadequate documentation – were "entirely of original Chinese ethnicity and nationality" and that Appellees, accordingly, had "discriminatorily placed [Appellants and similarly-situated individuals] into a gray limbo of de facto statelessness." Id. ¶ 22. They alleged that similarly-situated whites were treated differently and provided full evidentiary hearings prior to any denaturalization actions taken against them. Id. ¶ 23. The First Claim for relief alleges a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution and the Second Claim for relief alleges a violation of (inter alia) Section 1981.

Appellees moved to dismiss under Rule 12(b)(1), claiming that the district court lacked subject matter jurisdiction because (1) the Complaint failed to state a claim pursuant to 42 U.S.C. § 1983 and (2) 8 U.S.C. § 1503 provided them with an adequate remedy, precluding resort to the various other remedial statutes (the Mandamus Act and the Administrative Procedure Act) invoked by the Complaint. Doc. No. 13. The initial motion made no mention of 42 U.S.C. § 1981. Id. See 2 Doc. No. 15 at 2 n.2 (mentioning Section 1981 for the first time in a footnote in the Government's reply papers). The court below rejected the Government's subject matter jurisdiction argument, but sua sponte addressed whether the Complaint stated a claim for relief. Doc. No. 18 at The lower court concluded that the Complaint failed to state a claim for relief, but it did not explicitly address why the allegations did not

properly state a claim for race discrimination in violation of the Fifth Amendment's Due Process Clause. As to Section 1981, it concluded that it "does not apply to federal Appellees acting under color of federal law." Id. at 13.

The court below dismissed the Complaint "without prejudice." Appellants moved to amend the complaint following the trial Court's directives by inserting claims under 8 U.S.C. § 1503.   In the meantime, the Amended Complaint had kept Appellants' substantive due process claims and civil rights violation claims. DC Court ECF Doc. No. 24, To pave the way for the lower court to adjudicate the Amended Complaint which Appellants believed that they made such amendments dutifully following the trial judge's directives, Appellants filed their motion for leave of the court to file Amended Complaint.   The lower Court apparently disfavored Appellants' decision to keep constitutional claims and civil rights claims, in addition to the amended section, it denied the Motion for Leave to Amend, procedurally leading to dismissal of denied the motion on the grounds that the proposed amended complaint did not rectify the original complaint's defects (by failure to have deleted 5th Amendment violation and Civil Rights violation issues) and that permitting the proposed new claim under 8 U.S.C. § 1503 would be futile. Doc. No. 31.

## Argument VII: Meritorious Civil Rights Issues Should have Survived Motion for Summary Judgment

Trial Judge's Decision to summarily dismiss the case on last ground addressing Appellants' civil rights claim, that the "Complaint and Amended Complaint had failed to show a cause of action upon which relief can be granted", may have deviated from her own prior ruling directing Appellants to follow the framework of Twombly andIqbal.AA68 "Whether a complaint sufficiently states a claim upon which relief can be

granted is governed by the Supreme Court's plausibility pleading framework." See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 14 (2007). Both Iqbal and Twombly, however, pertain to whether a complaint contains sufficient factual matter to proceed beyond dismissal. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the Appellant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.");    Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

In underlying case momentarily appealed, both Appellees and the presiding Judge, failed to address the Twombly-Aqbal reasons why should Appellants' §§ 1981 and 1983 counts of the complaint for insufficient factual details given to the fact that Complaint-Amended Complaint presented detailed facts in comparative studies between the Federal Actor's discriminatory treatment in handling due process attached "denaturalization" proceedings between the ethnic Chinese and other "superior" races. (AA6-14)

Therefore, the lower court improperly, most likely recklessly, dismissed Appellants' Fifth Amendment claim for relief to the extent it was based upon allegations of race discrimination. Moreover, the court below resolved an issue of law, i.e., whether Section 1981 reaches conduct taken under color of federal authority, that the lower Court had never addressed, much less resolved. Therefore, the Lower Court's decision of dismissal must be reversed and vacated. As matter of fact,the complaint states a claim for relief under the equal protection component of the due process clause.

"Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded

upon the doctrine of equality." Hirabayashi v. United States, 320 U.S. 81, 100 (1943). The Due Process Clause of the Fifth Amendment to the United States Constitution has an "equal protection" component that provides the same protection against federal government classifications on the basis of race that the Equal Protection Clause of the Fourteenth Amendment provides against similar state and local government classifications. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 224 (1995).

Such government classifications must meet "strict scrutiny": they must be narrowly-tailored to achieve a compelling governmental interest. Id. at 227. The complaint here alleged that individuals of Chinese ancestry were treated differently from whites and other races. Accordingly, it set forth facts sufficient to constitute a claim for race discrimination under the Fifth Amendment's Due Process Clause.(AA16-24)

The court below failed to address the race discrimination allegation in its discussion of the Due Process Clause. Doc. 18 at 8-12.(AA130-134) It offered two reasons for dismissing theDue Process Clause claim: a failure to exhaust remedies and a failure to specify what type process is due.

The first reason is simply inapplicable to a claim for race discrimination under the Fifth Amendment. Exhaustion is a process whereby someone who has lost a particular benefit or right is required to use processes available in the executive department before seeking judicial relief. But the harm in a race discrimination claim is not the loss of a particular benefit or right, but unequal treatment. Adarand, 515 U.S. at 212 (1995) (in challenge to law that provided for various "goals" for participation by "socially and economically disadvantaged individuals" in government contracts, and that created a rebuttable presumption that members of certain groups were disadvantaged, Court holds that white-owned guardrail company had standing to seek injunctive relief because the company wanted to bid for contracts in the future; Court also

holds that past injury is irrelevant and rejects suggestion that Appellant
had to show that it has been or will be the low bidder on any contract);
Northeastern Florida Chapter of the Associated General Contractors of
America v. City of Jacksonville, 508 U.S. 656, 658, 666 (1993)
(contractors' association had standing to challenge "preferential treatment
to certain minority-owned businesses in the award of city contracts"
regardless of whether "one of its members would have received a contract
absent the ordinance"; "[t]he 'injury in fact' . . . is the denial of equal
treatment resulting from the imposition of the barrier, not the ultimate
inability to obtain the benefit"); Heckler v. Mathews, 465 U.S. 728, 739
(1984). Requiring members of one race to exhaust their remedies because
of unequal treatment at the outset is to force them to undergo the very
disparate treatment that the anti-discrimination norm prohibits In any
event, as the court below recognized, an exhaustion requirement In any
event, as the court below recognized, an exhaustion requirement USCA
Case #16-5010 Document #1608840 Filed: 04/14/2016 Page 14 of 25

It deserves mention that the Government did not mention either of the
lower court's rationales in its motion to dismiss for a lack of jurisdiction.
In its reply papers on that motion, the Government asserted in a footnote
that the race discrimination allegations did not meet the requirements of
Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Doc. No. 15 at 6 n.6. The court below did not address that issue.
Indeed, its decision to dismiss the Section 1981 claim on a questionable
interpretation of that law suggests that it either did not believe that the
Government adequately argued the issue or found the Complaint's
allegations sufficient. In any event, since discrimination can be proven by
direct evidence, a complaint alleging disparate treatment need not plead
details for every element. Gordon v. U.S. Capitol Police, 778 F.3d 158,
162 (D.C. Cir. 2015).

In any event, as the court below recognized, an exhaustion requirement USCA Case #16-5010 Document #1608840 Filed: 04/14/2016 Page 14 of 25 The Court's second reason to justify the dismissal of the Due Process Clause claim (and the only reason given for dismissing Appellant Xia's Due Process claim) – an insufficient explication of what process is due (Doc.18 at 10-11,AA132-133)is equally inapplicable to a race discrimination claim under the Due Process Clause. The process that is due is obvious: equal treatment.

## Argument VIII. TRIAL COURT FAILED TO ADDRESS §1981 REACHES ACTION TAKEN UNDER COLOR OF FEDERAL AUTHORITY

The court below dismissed Appellants' claim under 42 U.S.C. § 1981 on the ground that that provision does not reach actions taken under color of federal authority, citing two cases from other circuits. Doc. No. 13. As noted previously, It deserves mentioning that the Government did not mention either of the lower court's rationales in its motion to dismiss for a lack of jurisdiction. In its reply papers on that motion, the Government simply asserted in a footnote that the race discrimination allegations did not meet the requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009). Doc. No. 15 at 6 n.6. The court below did not address that issue.

Indeed, its decision to dismiss the Section 1981 claim on a questionable interpretation of that law suggests that it either did not believe that the Government adequately argued the issue or found the Complaint's allegations sufficient. In any event, since discrimination can be proven by direct evidence, a complaint alleging disparate treatment need not plead details for every element. Gordon v. U.S. Capitol Police, 778 F.3d 158, 162 (D.C. Cir. 2015).

This issue was litigated in the Government's motion for partial summary affirmance in DynaLantic v. U.S. Dep't of Defense, and the

motions panel there denied the motion. For the reasons set forth below, and in the attached papers from the DynaLantic appeal, Section 1981 should be interpreted to reach action taken under color of federal authority. At the very least, the issue is too close to grant the Government's motion for summary affirmance here.

The court below, as most courts who have reached similar conclusions, cited the text of Section 1981(c), which provides that the rights in Section 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Section 1981(c), then, does not state one way or the other whether Section 1981 reaches conduct under color of federal law.

To be sure, the principle of expressio unius est exclusio alterius does support the court below's opinion. That is, by identifying aspects of the reach of the statute and not mentioning federal actors, Section 1981(c) implies that the statute does not apply to the federal government.

But while expressio unius is an important guide to statutory interpretation, it is not dispositive. E.g., Marx v. General Revenue Corp., 133 S. Ct. 1166, 1175 (2013) (rejecting the government's expressio unius argument that provision of Federal Debt Collection Act, providing for costs when a case is brought for improper purposes, precluded district court from awarding costs pursuant to its traditional authority in the absence of such purposes; "[T]he expressio unius canon . . . does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'") (quoting Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)); Bingler v. Johnson, 394 U.S. 741, 749, 751-52 (1969) (rejecting taxpayers' expressio unius argument that the listed limitations on the exclusion of scholarships from income were the only limitations although "Congress' express reference to the [expressly stated] limitations . . . concededly lends some support to the

[taxpayers'] position"); Ford v. United States, 273 U.S. 593, 611 (1927) ("The [expressio unius] maxim . . . is often helpful, but its wise application varies with the circumstances."); id. at 612 ("'It is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The 'exclusio' is often the result of inadvertence or accident . . . . '") (quoting Colquhoun v. Brooks, 21 Q.B. Div. 52, 65).

Here, expressio unius runs into, and must yield to, a separate, and equally important, interpretive maxim: the strong presumption against implied repeals. Section 1 of the Civil Rights Act of 1866, 14 Stat. 27, is the source for both 42 U.S.C. § 1981 and § 1982. E.g., Patterson v. McLean Credit Union, 491 U.S. 164, 196 (1989) ("[T]he language of both § 1981 and § 1982 appeared traceable to § 1 of the Civil Rights Act of 1866 . . . . "); Runyon v. McCrary, 427 U.S. 160, 170 (1976) ("both § 1981 and § 1982 derive" from Section 1 of the 1866 Act); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 422 n.28 (1968); Georgia v. Rachel, 384 U.S. 780, 789 n.12 (1966).

In interpreting Section 1, the *Supreme Court has found that it reached conduct under color of **federal law** as well as color of state law*, in addition to private conduct. District of Columbia v. Carter, 409 U.S. 418, 422 (1973) (stating that Section 1 of the **Civil Rights Act of 1866 is "an 'absolute' bar to all such [racial] discrimination, private as well as *public, federal* as well as state"**) (emphasis added); id. ("the same considerations that led Congress to extend the *prohibitions of § 1982 to the Federal Government apply with equal force to the District [of Columbia]*, which is a mere instrumentality of that Government").

Prior to the Civil Rights Act of 1991, lower courts specifically applied that holding to Section 1981. E.g., Baker v. F&F Investment Co., 489 F.2d 829, 833 (7th Cir. 1973); Bowers v. Campbell, 505 F.2d 1155, 1157-58 (9th Cir. 1974); Petterway v. Veterans Admin. Hospital, Houston,

Tex., 495 F.2d 1223, 1225 (5th Cir. 1974) (*claims against federal officials under Section 1981* dismissed only insofar as sovereign immunity would prohibit them); Young v. Pierce, 544 F. Supp. 1010 (E.D. Tex. 1982).

Section 1981(c) was added by the Section 101 of the Civil Rights Act of 1991. Any claim that it impliedly repealed the scope of the Civil Rights Act of 1866, and overruled the authorities holding that Section 1 of the 1866 Act reaches conduct under color of federal authority, must overcome the strong presumption against implied repeals. Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003) (relying upon "the 'cardinal rule . . . that repeals by implication are not favored'") (quoting Posados v. Nat'l City Bank, 296 U.S. 497, 503 (1936)) (ellipsis as in Cook County).

Forest Grove School Dist. v. T.A., 557 U.S. 230, 239-40 (2009) (holding that amendment to the Individuals with Disability Education Act (IDEA) "'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.'… Accordingly, absent a clear expression elsewhere in the Amendments of Congress' intent . . . to abrogate our decisions, we will continue to read [more general provision] to authorize the relief respondent seeks.") (quoting Lorillard v. Pena, 434 U.S. 575, 580 (1978)); id. At 243 ("This reading of [the amendment] is necessary to avoid the conclusion that Congress abrogated sub silentio our decisions . . . . ").

Congress *did not* intend to repeal Section 1981's protection against federal discrimination. Several textual clues support that conclusion. For example, expressio unius blithely applied to Section 1981(c) would eliminate protection from discriminatory acts of territorial governments no less than discriminatory acts by the federal government. Cf. United States v. Wheeler, 435 U.S. 313, 321 (1978) (territorial governments are

creations of Congress and, in enforcing criminal law, act as agents of the federal government). Yet, Congress did not eliminate the word "Territory" from Section 1981(a). Thus, under the Government's theory, citizens in the territories are protected from private discrimination under Section 1981, but,  counterintuitively, not government discrimination. "The Committee intends to prohibit discrimination in all contracts, public and private.");H.R.1H,102nd Congress,§12(1991)(availableathttp://thomas.loc. gov/cgi-bin/query/z?c102:H.R.1:); Arendale v. City of Memphis, 519 F.3d 587, 598 (6th Cir. 2008).

In fact, Congress's general purpose in the Civil Rights Act of 1991 was to expand rights that it believed had been unduly constricted by Supreme Court decisions. Id. at 597. It would be most strange, given that purpose, to conclude that Congress, without so much as a word in the legislative history, decided to cut back on a substantial Reconstruction-era civil rights provision. E.g., Chisom v. Roemer, 501 U.S. 380, 396 & n.23 (1991) (holding that 1982 amendments to Section 2 of the Voting Rights Act, designed to expand liability under that provision by adding a "results" test, and that used the word "representative" in describing elections covered under the section, did not sub silentio amend the statute to remove coverage of judicial elections; "[W]e are convinced that if Congress had such an intent, Congress would have made it explicit in the statute, or at least some of the Members would have identified or mentioned it at some point in the unusually extensive legislative history of the 1982 amendment. . . ."Yet well established precedent long held that "a naturalized citizenship is within the zone of protected life, liberty and property." (Board of Regents v. Roth, 408 U.S. 564 (1956)"To deport one who claims to be a citizen obviously deprives him of liberty…It may also result in loss of both property and life…"Ng Fung Ho v. White 259US 276, 284, 42 S. Ct. 492,495,66 L. Ed. 938.

## IX. CONCLUSION

  Wherefore, in the foregoing light, Appellants respectfully pray that the Lower Court's November 19, 2015 final judgment be reversed and vacated. This case should be remanded in the light of the Honorable Panel's instruction. Appellants humbly pray for all other relief this Honorable court finds it appropriate.

An Oral Argument is hereby respectfully prayed.

  Respectfully submitted by,


  /s/Ning Ye, Esq.,
  Counsel for the Appellants for the Records
  36-26A Union Street, Suite 3F
  Flushing, NY 11354
  Telephone: 718-308-6626
  Facsimile: 718-228-5816
  Email: ynyale@aol.com

**<u>Certificate of Compliance</u>**

This undersigned hereby certifies on this 7thth day of November, 2016, he completed the Opening Brief of less than 40 pages (36 pages, all double spaced, single spaced for footnotes, and quoted case citations), by word count from 10,531 words, excluding words un-counted in Cover, Table of Contents, Table of Authorities and all suffix attachment, less than the ceiling of 14000 words for opening brief pursuant to FRAP32（a）(7). Consequently, the format of the Petitioner's Brief has been in full compliance with the type-set, Times New Roman 14, double spaced, and word format, with 10531 words.


_____
/s/Ning Ye, Esq.

CERTIFICATE OF SERVICE

This is to certify that I have this 10th day of November, 2016 served a copy of this Opening Brief to the counsel of record in the foregoing matter on behalf of all Appellees via the Clerk's ECF Broadcasting systems. This undersigned further certifies that he will also cause to serve with two copies of the physical hardcopy of this Brief, finally compiled, indexed, together with two physical copies of the Appellant's Appendices, by USPS postage prepaid, priority Mail to the same Federal Appellees via their counsels of Records shortly after.

_____

/s/Ning Ye, Esquire
Counsel for the Appellant
36-26A Union Street, Suite 3F
Flushing, NY 11354
Telephone: 718-308-6626
Facsimile: 718-228-5816
Email: ynyale@aol.com